IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHALL PETTY, # B-13277,  )  )  Plaintiff,  )  )  vs.  )  )  BETH TREDWAY,  )  TRAVIS JAMES,  )  JOHN COE,  )  LORI CUNNINGHAM,  )  ILLINOIS DEPT. of CORRECTIONS,  )  and WEXFORD HEALTH SERVICE,  )  )  Defendants.  ) | Case No. 15-cv-1118-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that Defendants were deliberately indifferent to a serious medical condition. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

      Plaintiff's statement of claim is very brief; it is quoted here in its entirety:

> I told Travis James I have a bite it's swollen and infected Travis James denied me medical treatment know [sic] medication which is a violation of my medical needs which is in the 8th Amendment a right for medical care. H.C.U. denied me.

(Doc. 1, p. 5). On other pages of the pleading, Plaintiff notes the bite was on his hip or thigh (Doc. 1, pp. 2, 7). Plaintiff seeks only damages for the alleged violation of his rights (Doc. 1, p. 6).

      Some additional facts can be gleaned from the exhibits Plaintiff included with his complaint. In a grievance submitted on August 29, 2015, Plaintiff says he was bitten by a spider on August 20[1] (Doc. 1, p. 9). On August 22, a nurse referred him to Defendant James (Physician

---

[1] All references herein to dates are for 2015.

Assistant). Defendant James prescribed antibiotics, but these "had no effect." *Id*. On August 28, Plaintiff again sought medical attention because the area around the bite had become inflamed, his entire leg was stiff, and the location of the bite was "a hole about the size of [his] small finger nail." *Id*. He was concerned because his diabetes would hinder the healing process, and the open wound with no dressing could expose him to secondary infections (Doc. 1, p. 10). The officer who responded to this grievance noted that Plaintiff was treated on August 24 and was told to return to nurse sick call if his symptoms did not improve. He went to nurse sick call on September 1, and he was placed on the schedule to see the Physician Assistant on September 3.

In an affidavit dated September 15, 2015, Plaintiff states he saw Defendant James for a spider bite and was given only a bandage for the wound (he did not specify the date of this visit). Defendant James saw "the other bite" and told Plaintiff to let a nurse know if it became worse (Doc.1, p. 7). Plaintiff did so on September 16 because his thigh was swollen. Another grievance dated September 17 (which Plaintiff failed to sign) notes that the bite had pus coming out of it (Doc. 1, p. 14). Plaintiff had already written to Defendants Cunningham, Tredway, Coe, and James seeking treatment but had received no response.

In an undated page labeled "Motion for 8th Amendment Violation Deliberate Indifference," Plaintiff summarizes that when he saw Defendant James for seizure clinic, he told Defendant James he thought he had a bite (Doc. 1, p. 13). Defendant James told Plaintiff to tell a nurse if it gets worse. Later on, Plaintiff told a nurse and Defendant James, "its hard." Defendant James said to "see if it bust open [sic]." *Id*. Plaintiff claims the bite was already infected, and he got no treatment "until it was a hole in my leg." He received treatment after two nurses saw his condition. A test showed he had a "staff [sic] infection." *Id*. He wrote to Defendants Coe and Cunningham but got no response. Plaintiff gives no dates on this document to show when any of

these events occurred.

In another affidavit, Plaintiff states that on October 2, 2015, he still had the infection and was at that time receiving treatment, noting, "I go every day to be treated for staff [sic] infection" (Doc. 1, p. 19). Curiously, the date at the end of this document next to Plaintiff's signature, and on his certificate of service, is September 22. *Id*. Plaintiff's complaint was received and docketed on October 9, 2015.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

After fully considering the allegations in Plaintiff's complaint, the Court concludes that it fails to state a claim upon which relief may be granted. The complaint shall thus be dismissed without prejudice. If Plaintiff still wishes to pursue his claim, he may submit an amended complaint to present all facts that would support a claim for deliberate indifference to his medical needs arising from the spider bite(s). If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review under § 1915A.

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*,

792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

In the present case, Plaintiff's spider bite and subsequent infection arguably amounted to a serious medical condition, which would satisfy the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

The statement of claim that appears on Page 5 of the complaint (quoted above) is just the kind of conclusory statement that is inadequate to support a civil rights action. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Moreover, the claim that Defendant James denied medication to Plaintiff is contradicted by the facts in his attached exhibits. Taking into consideration the piecemeal factual allegations found in those exhibits, the chronology of events may be summarized as follows:

Plaintiff was bitten by the spider on August 20. Defendant James prescribed antibiotics on August 24, during Plaintiff's first visit to him. Plaintiff sought medical attention again on August 28 (he does not say from whom), by which time his leg was stiff and the bite area had become a hole. He went to nurse sick call on September 1 and was scheduled to see the P.A. (presumably Defendant James) again on September 3. He does not say what happened at the September 3 visit, however, he was given a bandage by Defendant James at some point prior to September 15. Around September 15-17, Plaintiff's thigh was swollen, and the wound was

discharging pus. At some time between September 17 and October 2, Plaintiff received further treatment (again, he does not say from which provider) for what had been diagnosed as a staph infection. His affidavit reflects that by October 2 (and possibly as early as September 22), he was going to Health Care every day for treatment. Plaintiff also refers to another bite, but he does not explain further.

These facts do not support a deliberate indifference claim against Defendant James. When Plaintiff sought treatment from him on August 24 (four days after Plaintiff was bitten), he responded by prescribing antibiotics. If, as Plaintiff claims, the medication was ineffective, this does not establish deliberate indifference to a medical need. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). At another visit, Defendant James provided a bandage to cover the wound. There is no indication that this treatment was inappropriate or inadequate; Plaintiff points out that he needed a dressing for the open sore. Plaintiff complains that he wrote to Defendant James at some point seeking further treatment but got no response. He does not, however, give the date(s) when he sent this correspondence, nor does he disclose when he was diagnosed with or began receiving treatment for the staph infection. Thus, it is impossible to discern whether Defendant James was responsible for any delay in treatment, or even whether there was an unreasonable delay that placed Plaintiff at risk of serious harm.

As for Defendants Tredway (Warden of Health Care Unit), Coe (physician), and Cunningham (Director of Nursing), Plaintiff states only that he wrote to them seeking treatment, and they did not respond. It appears that he sent those letters in early or mid-September. He does not state whether he wrote to any of them more than once. His only description of the contents of his letters is that he told them he had a bite and his hip was infected (Doc. 1, pp. 1-2). He never alleges that he spoke with any of these Defendants in person or was examined by them. These

facts are not sufficient to demonstrate that Defendants Tredway, Coe, or Cunningham realized that Plaintiff faced a serious health risk but did nothing to address it. He thus fails to state a cognizable deliberate indifference claim against these individuals.

Finally, Plaintiff includes the Illinois Department of Corrections ("IDOC") and Wexford Health Service ("Wexford") as Defendants. The IDOC, which is an agency of the state government, cannot be sued for damages in a civil rights action. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same). Defendant IDOC shall be dismissed from the action with prejudice.

Defendant Wexford is a corporation that employs Defendants James, Coe, and Cunningham and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff makes no allegation that any individual Defendant acted or failed to act as a result of an official policy espoused by Defendant Wexford. Therefore, the complaint does not support a deliberate indifference claim against Defendant Wexford.

As previously noted, Plaintiff shall have the opportunity to submit an amended

complaint, in accordance with the instructions below.

**Pending Motions**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order.

Plaintiff also has filed a motion for recruitment of counsel (Doc. 3). The fact that Plaintiff must prepare an amended complaint in order to proceed with this action raises the question of whether Plaintiff is capable of drafting a viable complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

In his motion, Plaintiff does not claim to have taken any action at all to attempt to find an attorney on his own. He thus has failed to meet the first requirement above. For that reason alone, his motion for recruitment of counsel shall be denied.

Turning to the second step of the inquiry, Plaintiff states that he has only completed grade school and that his facility with the English language is impaired "due to stroke nerve damage" (Doc. 3, p. 2). He lists several medications that he is taking, including Tegratol, Prozac for mental illness, Gabapentin, and Phenobarbital. The Court observes that Plaintiff's handwritten documents are legible and that he appears to be capable of setting forth the facts that gave rise to his complaint. Further, Plaintiff filed a previous *pro se* civil rights action in this Court earlier in 2015, which is currently pending after having survived review under § 1915A.

At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak, and all that is required is for Plaintiff to flesh out the facts underlying his claims, including relevant dates and connecting the Defendants to the events he describes. Plaintiff alone has knowledge of these facts, and no legal training or knowledge is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time, and the motion (Doc. 3) is **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

The Court **RESERVES RULING** on the motion for service of process at government expense (Doc. 7) pending receipt of Plaintiff's amended complaint, should he file one.

**Disposition**

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **ILLINOIS DEPARTMENT of CORRECTIONS** is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before **December 8, 2015**). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 15-cv-1118-NJR. For each Defendant, Plaintiff shall describe the actions (or omissions) alleged to have been taken by that Defendant, which demonstrate deliberate indifference to Plaintiff's medical condition. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include all the relevant facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). In other words, Plaintiff must "start from scratch" as he drafts the amended complaint. The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such a dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  November 3, 2015

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**